There is a culture war going on in this country, and one of its battles is abortion. On one someone like us comes into existence at conception. On the other side of the battle line, the belligerents believe the human being does not come into existence at conception, that a fetus is merely tissue, simply part of the human body, much like an appendix. One of the battle lines for that war runs through the Planned Parenthood Clinic a couple of miles from here. It is on the front line of the culture war. And I represent Mary Doe and members of the Satanic Temple have gone into Planned Parenthood seeking an abortion. If they did it in almost any other state in the Union, they would simply have a medical procedure removing fetal tissue. But in Missouri, they get subjected to what we call the Missouri Tenet and Missouri Lectionary. Here's how it works. But you don't get to fight the war in court unless you have standing. So how do you have standing? You have injury. You have injury in fact, particularized and concrete. Okay, so Mary Doe has had an abortion in the past but doesn't seek any damages for that. Of course, the abortion is irrelevant. Guilt, doubt, and shame is what gives her standing. She walks into Planned Parenthood and she is told, young lady, human life begins at conception. Young lady, you have to have an ultrasound. Would you like to hear the fetal heartbeat? Young lady, go sit in the Red Roof Inn in St. Louis for three days. Well, but as I understand what the state is saying, at least part of what they're saying is that she was subjected to it and for purposes of argument, we will assume that she felt guilt and shame and was offended by the Missouri Tenets. But that she's not asking for any damages for that. And because she's not, now, you know, I don't know if that means if you amend your complaint, ask for a dollar, then she has standing. But at least at this point, she's not asking for any damages. She's only asking for prospective relief and the district judge said, well, there's no guarantee or I don't know what exactly word we would use that she's going to become pregnant and need another abortion. So, I mean, why is she, you know, I guess they're saying, well, she's not asking for damages. Therefore, there's no claim here. Well, be clear. Yeah, be clear. The district court ruled that solely on the basis that she had already had the abortion, did not address at all what the court must accept as true, that they felt guilt out and shame that they were offended by the, and they were hurt by the Missouri Tenets. There are two claims. The first is the Establishment Clause claim. She does not need to show any kind of ongoing injury after the initial contact. Establishment Clause cases, Standing Establishment Clause, excuse me, Clause cases represents a special case in our jurisprudence. You don't have to keep going back to see the Ten Commandments to have standing to complain about their being there in the first instance. One offensive contact is sufficient. Okay. In the case of the Equal Protection claim, the injury lingers on. One is sufficient, even if you're only seeking prospective relief. Is there a case that says that? I think if you look at the Freethinkers case, there was no requirement that they had to go back and look at that Ten Commandments a second time. I think they pled that they were exposed to it all the time. Well, we have pled that they will, we will be exposed to it all the time. Members of the Satanic Temple have pled that they will be exposed to this, to the Tenet and to the Missouri Lectionary when they go back to have an abortion. They pled that they were pregnant, that there were members who were pregnant and who... They pled that they will be subjected to it. That was the general allegation, and within the ambit of that general allegation, you must infer that they will have to, that they will be subject to it again. But really the question, you know, the question is this. If what you're looking for, what are you looking for in standing? You're certainly looking for the authority to reduce or to find a state law unconstitutional, and what you need is a litigant who's got skin in the game. Basically, that's it. All right, the question is, how much skin in the game do we have to keep going back time after time? How much skin in the game do we have to put before we get standing? Just once, twice, three times? I mean, keep in mind here that these are very specific events. These are the outcome of unwanted pregnancies. It's not like it's planned. And then there's a very limited time frame to make up your mind about whether you want to go for an abortion, all right? And in our case, in terms of the people that we represent, we have another compelling thing working against us, which is not only guilt, doubt, and shame, but the culture war is a shooting war. Doctors who give abortions get shot, and Mary Doe, whose true identity is only known to two people, including myself, potentially puts herself at her name to this action. So in addition to everything else that a litigant has to take into account when she says, am I going to be a plaintiff in a case like this? She has to make a decision of how much she's going to put herself personally at risk. So I come back to the original question is, how much skin do we have to put in the game? I submit that we have already put plenty to establish standing. Now, the time that I've asked for initially is running out. I reserve it for rebuttal, but I'd be glad to sit here and answer any questions you have. Well, let me ask one question. To what extent, if at all, do you think that the jurisprudence going back to Roe versus Wade applies that says that abortion cases are unique in the standing context because of the fact that by the time you litigate a case, the pregnancy that may have been there, even if there was one at the start, no longer exists? Does that have any applicability to this standing issue? If you take abortion as the litmus test, threshold point, and we do not, you really what the way that Roe recognized exactly what I said is that you have in this context, you have a very specific limited window of having a litigant step forward and present her case to the court. And in the case of Roe, the court recognizes the clock runs out. Therefore, we're going to rather than have it be moot, we're going to have this doctrine of, you know, letting it, we'll come back and look at it because it'll come up again. But, you know, we will come up again. That's what we've alleged. The satanic temple has alleged our members will come up again. And yet, how do you, how do you, you argue that the Missouri tenant is an impermissible state adoption of a theory of when life begins. Um, and the Supreme court, any sec fact says that the state may say what it does, what it's saying. Oh, the state can say anything it wants, but when the state starts taking, no, but when the Supreme court says that, what are we going to do? No, no. What the Supreme court said is the state can say anything it wants. It can make a value judgment. And the state has made a value judgment. What this court has said, it's an impermissible theory of life. When, as in this case, that value judgment is put in front of someone getting a medical procedure, it is no longer just a value judgment. It now crosses the constitutional line into affecting individuals. The question can human life begin conception is not capable of resolution by the political process. It is not capable of resolution in the legislature is capable of resolution only in the minds and the hearts of individuals. And the religion clause says that that remains there. So long as you keep the resolution of that issue on the battlefield, you continue to complicate the culture war. So the solution to that problem is to say what your honor, I'm asking you to do a very heavy lift here. Okay. Because the way this case is shaping up, there are two questions to answer either a abortionists or Satanists can have abortion on demand in Missouri or be the state of Missouri can don the clerical garb and preach Christian dogma from the waiting room of Planned Parenthood. But that's not the question we have to decide. No. All we need to decide is can Mary raise that issue? Yes. Do you want to avoid it altogether by making us put more skin in the game than we already have? Or do you want to send it back to the to the trial court and let the process work? Is it plausible to plead that members of the temple who don't believe that it's a human being would endure guilt and shame by being exposed to the state's view? Is that that's what we've I don't see how. Well, if they believe it's not a human being, and yes, and that's part of the religious tenant, right? Why would they have doubt, guilt and shame? Here's Mary Doe. Mary Doe is sitting in the waiting room at Planned Parenthood. She is undergoing assault, an ultrasound back. I turned to Mary Doe and say, would you like to listen to the human heartbeat? That Mary Doe at that point in time feels guilt, doubt and shame. Why? Well, because that was entirely the point. The whole point of Missouri electionary and the whole point of Missouri tenant is to get into her head and her heart and cause her to double guess herself and to doubt herself and to think that maybe, yeah, maybe just yeah, I'm committing murder here. It is injury that in the in the in the establishment context, it's called stigmatic injury, but it doesn't really do it justice. Think of it in terms of the injury in the Abington case of the child who sits in the in the classroom, has to listen to the to the Christian prayers and is a Hindu. Or has to salute the flag or have. I'm not even going to go there. That's a whole different cultural war battle. I reserve the rest of my time. Mr. Sauer, you may proceed. Thank you, Your Honor. And may it please the court, John Sauer appearing on behalf of the state in this case. I want to begin by addressing two points that were raised in my opponent's argument. First is the question of whether or not there is standing for any member of the satanic temple other than Mary Doe, whether or not associational standing can be based in this case in this case based on allegations about other members of the satanic temple. That argument was pushed in the first section of the reply brief in this case is squarely foreclosed by U.S. Supreme Court president, which is reaffirmed by this court just last May in the Ouachita Watch League case. In the case summers against Earth Island at 555 U.S. 488, the U.S. Supreme Court held that an association that seeks to assert standing on the basis of its members must provide specific allegations and specifically identify the member who is adversely affected by the challenge government practice. So the Supreme Court said that specific allegations that at least one identified member has suffered or would suffer harm is required to support association has to be identified. It's in fact, the Supreme Court goes on to say the requirement of naming the affected member in the complaint is required. So in this case, you have a generic. I was going to ask you, they do actually have a pleading that says members of the satanic temple include women who will get an abortion. Yes, that's you're saying that's not sufficient, categorically insufficient as a matter of law under the summer against Earth Island Institute case. And this court held that recently in May of 2017 in the Ouachita Watch case, it quoted from that passage and summers against Earth Island and said you must identify this specific member. And so the argument was made actually in the Earth Island case that, well, you know, it's a gigantic organization of environmentally minded people. And obviously, statistically, at least one of them is going to have a specific injury that arose from the challenge environmental practice. Majority of the Supreme Court said that is insufficient as a matter of law. So associational standing in this case can only be based on the allegations that are because the only individual human being about whom there are any specific allegations in the complaint is Mary Doe. That paragraph 10 that just says members of the satanic temple that have had abortions in the past and will have abortions in the future is insufficient as a matter of law. So the court can take off the table the arguments based on associational standing that have nothing to do with Mary Doe. The only question really is, does Mary Doe have standing? And I want to start by turning to what you asked Judge Malloy on the other side about are there relaxed standing rules in the abortion context under Roe versus Wade? As applicable here, absolutely not. Roe versus Wade itself held that a woman who is not currently pregnant lacks standing to challenge an abortion related restriction. So Roe, there were two sets of plaintiffs in Roe. There was Jane Roe, who was pregnant at the time the complaint was filed. And then there was a couple called the Doe's who said, we anticipate we may get pregnant in the that they lack standing because they were not currently pregnant and whether or not they would become pregnant in the future was a matter of conjecture and speculation. So in this particular case, the fact that Mary Doe was not pregnant at the time the complaint was filed and merely alleged that she may become pregnant in the future is clearly insufficient to allege an injury. In fact, especially because as we pointed out in our briefs, she sought only prospective relief in this case, only declaratory and injunctive relief. The Supreme Court has emphasized again and again that the injury to support prospective relief must be certainly impending. And because she does not allege that she is pregnant now and she has made a firm decision to have an abortion, she lacks standing to file this complaint. And I would point out that in fact, this same litigant, Mary Doe, represented by the same council actually did file a parallel state court action during the 72 hours, during the three days between when she first made contact with Planned Parenthood in 2015 in which she had the abortion. And the state has not opposed that case on standing grounds. We've argued it on the merits. That case was argued last week in Missouri State Court. So this notion that there's such a limited window that there could never be a plaintiff who would have standing to challenge this is contradicted by this very litigant in this case. That case is Mary Doe against Gritens number WD80387 in Missouri State Court. So the argument, oh, there could never be a plaintiff who has standing under the state's view of standing is incorrect. Although I would point out that reading Supreme Court case law fairly, it does not trouble the Supreme Court that in certain injuries, there may never be a litigant who has standing to address them. I also want to address there are two, I think, new, I view them as sort of new or evolved theories of standing that were advanced in the reply brief in this particular case. One is this notion that there is a stigmatic injury. And as I understand the arguments that this stigmatic injury is felt by all members of the satanic temple, in a sense, irregardless or irrespective of whether or not they're pregnant at the time, because there's some sort of message of exclusion to them by the fact that the state is sort of advancing its view of life begins through the informed consent law. The absolute high watermark of recognition of this kind of injury in the religion clauses, I think, is the AWAD versus Zeriak's case that they rely on in their brief. And then the Catholic League against San Francisco case that AWAD relies on. Those are cases where the AWAD case is the case where Oklahoma passed an amendment that says you can't rely on Islamic law in state court. And the 10th Circuit held that a Muslim had standing to challenge that, but in a very narrow holding said, this is specifically because there's an expression of expressed disfavor from this. In other words, Oklahoma said, Islam is the bad religion, and we're not going to allow, you know, Islamic law into court. Therefore, that created standing for Muslims to challenge it. Similarly, in the Ninth Circuit's case, in the Catholic League case from 2010, the argument was this non-binding resolution that the city of San Francisco adopted expressing disapproval of Catholic beliefs was an express specific disfavor of a particular religion. And we have nothing like that here. In addition, I believe both those cases, frankly, were wrongly decided, and they probably are no longer good law after Spokio against Robbins. In 2013, the Supreme Court went out of its way to reemphasize that the injury must be both concrete and particularized. And I think it's perfectly clear that the injury that every Muslim in the state of Oklahoma feels from a message of exclusion from this amendment is not a particularized injury. Let's talk about Mary Doe for a minute. You have to have injury, causation, and redressability, right? Correct. They allege injury, and I don't, I'm not sure if you're disputing that, but they've alleged that because she was exposed to the Missouri electionary, as it's referred to, that she was injured. It was caused by the electionary. So we got the first, I think we're, I think the first two elements, at least in my mind, are pretty easy. I think the third one is then, your argument is, well, there's no redressability because she's not asking for any damages for that injury. And, which I guess goes back to my question, if she just amended and asked for a dollar, then would she have standing? But you're saying the prospect of relief cannot be within the ambit of redressability? Is that your argument? That is admirably stated. I would have the caveat that, in fact, we don't concede that guilt, doubt, and shame constitute an injury, in fact, under Article 3. But why is it any different than having to observe a Ten Commandments display, like in the Freemason case, or not Freemason, Freethinkers case? I mean, why is it any different? Well, for example, in the Barber against Bryant case that we filed, a Rule 28J letter, it says those cases, the sort of religious display cases, require this concrete confrontation with a monument that is the outer limits of establishment clause standing. Well, that's the argument they're making. We have to take their complaint at its face. And their argument is that being asked to read the Missouri Lectionary, in their mind, is no different than requiring someone to read the Ten Commandments before they have an abortion. You know, there's really no difference. And now, maybe when you get to the merits, you can prove there's a difference. But at least, at this point, we have to take them at their word. The Court should view that allegation of guilt, doubt, and shame through the lens of what the Supreme Court said in the Valley Forge case, which is that mere psychological, the psychological consequences of disagreement from government action is not in Article 3 injury. But even assuming that it was, our principal argument is, as you stated, redressability. Clearly, I mean, in the Supreme Court, you may say they have to go back and ask for $1 of nominal damages. They never sought leave to amend the complaint in this case. They had the pending state court action where their standing has gone undisputed. But the Supreme Court has treated that as an important and critical difference because it has said again and again, for example, in Adirondack, that past damages do not establish the real and immediate threat of future injury that is required to support standing to claim prospective relief. And even if only nominal damages are required to be asked for, they must be asked for. And they were not asked for in this Supreme Court, strongly reaffirmed that the new injury must be certainly impending. Possible future injury is not enough. So the mere fact that she, even assuming that she's, there's an Article 3 injury that arises from being exposed to a government message that you disagree with, which... They're not saying a government message. They're saying a religious message. They're saying it's, yes, that the state requires. Yes. I mean, we obviously dispute that on the merits that there is no establishment of religion here, but as accepting that they say we've been exposed to an unwanted government message. Well, you keep saying government message, but that's not the claim. Because if it's a government message, I think we've said pretty clearly, you can do that from a governmental standpoint. It's the fact that it's a religious, they're trying to get around our prior precedent that says these types of statements are constitutional under the 14th Amendment. And they're saying, but it's a religious message. And they're, I think they're very careful to say it's a religious message. And so I think we have to take them at their word that they're arguing it on the establishment cause under the First Amendment, just like... They're saying it'd be no different than saying you have to read the Ten Commandments before you have an abortion. I absolutely agree that that is the allegation. And I think it's a question of law, whether or not that, the mere exposure to that message, which is a, they say a government religious message. It's a religious message required by the government when they go into Planned Parenthood. It's a question of law, whether or not that arises to the level of an Article III injury, in fact. But I agree. I mean, the way we've briefed it focuses almost entirely on this redressability question, which is an easy question. It's absolutely dictated by Supreme Court precedents that there is no redressable injury when there's a past exposure to the message and there's a single future, or there's a request for future injunctive relief. And I totally disagree with the characterization of the Establishment Clause cases dealing with religious displays as somehow dispensing with the Article III requirement of certainly impending future injury to support future injunctive relief. I point out that in the Freethinkers case, Red River Freethinkers, which is principally relied on by them, this court expressly held, it says in the opinion, there is no doubt of actual and imminent future injury. So as Judge Grunder pointed out, there was an allegation that that monument had been there for 50 years. There was ongoing exposure. In the Souray case from the Fourth Circuit that they rely on heavily, again, it was a litigant who said, look, the Ten Commandments are in the courtroom in the county courthouse. I'm in that courthouse all the time. I've had seven cases there in the past few years. They've all been heard in that courtroom. I've attended four public meetings there in recent times. I intend to do them in the future. The notion that any of those cases in some way dispensed with the requirement of certainly impending future injury really has no merit at all. So for those reasons, I would emphasize three things. First, there can be no associational standing for this organization based on any member other than Mary Doe because there are no specific allegations about any member other than Mary Doe in this case. Secondly, the argument that the religious display cases have dispense of the requirement of certainly impending future injury is absolutely incorrect as a matter of law. And then thirdly, the notion that there is a stigmatic injury that transcends the injury to the individual pregnant member of the satanic temple is, first of all, not clearly pled in the complaint. And secondly, it cannot be supported as a matter of law. It cannot be squared with, for example, what the Supreme Court itself held in Roe versus Wade, which is that a pregnant a woman who is not currently pregnant clearly lacks standing to challenge an abortion-related regulation. If there are no other questions, I will. Very well. Thank you very much. Let's break this down into Mary Doe and the satanic temple. Okay. This argument about we have to identify the members. This is a new argument. I haven't seen this before in any of the papers. And if the court is going to decide that Mary Doe herself does not have standing and then turn to the question of whether the satanic temple has standing, I would ask for the opportunity to address that question by a written response. Same with the letter that we got on Monday. This case was decided last June. Well, how come it doesn't wind up on my desk until two days before the oral argument? But let's focus on Mary Doe. Roe is predicated on privacy claim. We're not arguing the privacy claim. We're not arguing Doe. We're arguing the religion clauses. So again, the fact of abortion is irrelevant. The Littleton case, which we cited in our brief, says, The continuing adverse effects of the initial injury creates standing. It is redressable. Go back to Abington. Okay. If you say to the school system, you may not compel Christian prayer at the beginning of the school day. All right. That is at least a step of bringing that Hindu child into the body politic. He is no longer feeling like the outsider. Same thing with Mary Doe. If you give her the relief that we seek in this case, okay, that will vitiate the guilt, doubt, and shame, that feeling of being an outsider. Okay. I mean, how many times does Hester Prynne have to wear the scarlet A? If you say to her, you can take it off. It was wrong to require it to be put upon you in the first place. That will give you sufficient relief, standing, skin in the game, and give you the opportunity to come back and pose the truly difficult question in this case. If there are not any further questions, I will sit down. Very well. Thank you. We thank both sides for the arguments. The case is now submitted and we will take it under consideration.